Number 191802 City of Providence et al. v. US Department of Justice et al. Good morning. May it please the Court, Ryan Pandya on behalf of the United States. I'd like to reserve two minutes for rebuttal. You may. Congress granted the Office of Justice Programs to promote the effectiveness and coordination of law enforcement at all levels of government. To achieve those ends, Congress granted OJP many tools, including authority to place special conditions on all grants and to require grant applicants to certify compliance with applicable federal laws. These broad grants of statutory authority reflect the common sense idea that grant recipients should not be undermining federal law enforcement priorities. The District Court erred by narrowly construing OJP's statutory authority. The little time we have together this morning, I'm going to primarily focus on one statute, 34 U.S.C. Section 101-02-A6. The Special Conditions Statute was amended by Congress in 2006, at the same time the Burn JAG Program was created, to permit the Office of Justice Programs to place special conditions on all grants. Special conditions on all grants. This is broad authority that the Office of Justice Programs has exercised without challenge over the past decade to support over 50 grant-wide special conditions, including covering topics such as human trafficking, the use of force, bias in policing, training requirements, information reporting requirements. The District Court erred by finding that OJP's authority to place special conditions on grants was limited to powers enumerated elsewhere in the OJP or Burn JAG statute or delegated by the Attorney General. But if that was the case, there's no reason why Congress would have amended the statute in 2006 to expressly confer authority to place special conditions on all grants. OJ, could you just help me texture-y how you get to your reading, given that provision? Yes. So, I mean, if we take a look at the statute, it provides that we look at Section 101-02, which enumerates the duties and functions of the Assistant Attorney General, and it refers to the specific general and delegated powers under Subpart 6. It provides that the power exercises the powers that are vested in the Assistant Attorney General or delegated by the Attorney General. That's power that existed before 2006. And then the including phrase is what you're relying on, but I just don't quite see how you were able to treat that including phrase as not limited by what comes before it. Well, I think including can be a word. It can be sometimes. I'm just saying, given the way this is structured textually. Well, I think the structure has to be read against. We know including can be a word of clarification or it can be read conjunctively or as a word of expansion. And here we know that before 2006, the first part of Subpart 6 existed, so those powers existed. Congress would not have amended the statute to have done nothing. And I point Your Honor to the Ninth Circuit's decision in Los Angeles v. Barr, which was the only- I'm just stuck on the text. You exercise such other powers and functions as may be invested. Where do you get the verb for the including part that's not limited by what comes after exercise? Do you see what I'm saying? I understand your question, but I think the way we're reading including, it's a word. It should be read conjunctively. I know you keep saying it, but you need a verb before that, that says that you can exercise the power to place special conditions. But the way it's written is he can exercise such other powers and functions as may be vested in the AG, pursuant to this chapter or by delegation, and then including. So where do you get the verb other than that? Exercise such other powers as may be vested pursuant to this chapter or by delegation. Well, exercising is the verb, exercise. It may exercise such powers that were vested. But then it would read exercise including, which doesn't make a lot of sense. Well, I think including here is used as a conjunction to refer to Anne, so you may exercise the pre-2006 powers and you may exercise- But the word exercise isn't repeated. It doesn't say and you may exercise. Right. That would make a very significant difference here. Well, I don't think so. It refers to including placing special conditions on all grounds. You're skipping what comes before. You need a verb for the phrase including. You want it to be exercise. So then I would read it as shall exercise including powers. But that doesn't make sense. No, I think I read it as may exercise such other powers, including placing special conditions on all grounds. Isn't your reading that you're replying with to my two colleagues' questions rendered less plausible by the fact that on your reading, the authority that you argued for would be applied not only with respect to discretionary grants, but with respect to formula grants. And in the case of formula grants, the criteria for making a formula grant is expressly set out elsewhere, so that the amendment by implication is not particularly plausible. Well, let me address Your Honor's question in three parts. I mean, first, including placing special conditions on all grants and determining priority purposes for formula grants. So the statute refers to all grants, and then formula grants as a subset of all grants. Secondly, we're not contending, absolutely not contending, that we have authority to deviate from the formula for awarding the amount of funds here. And third, if I can point to the Ninth Circuit's decision in Los Angeles v. Barr, which was the only appellate court to directly consider the meaning of the amendment, that court found that this was a new grant of power. And maybe if I can talk about why that is. Now, the Ninth Circuit found that special conditions were a regulatory term of art. The regulation the Ninth Circuit cited was from 1988, and referred to special conditions for high-risk grantees. That regulation on its face referred to one type of special condition, one that by regulation individually applied to high-risk grantees. But it makes no sense to limit Section 101.026 to one class of special conditions. In doing so, it's inconsistent with federal grant regulations, and in more than a decade of OJP practice, and probably practice by other grant-making agencies as well. A condition that applies to an individual grantee is referred to a specific condition, not a special condition or an additional requirement. In fact, the regulation that the Ninth Circuit cited was repealed in 2014 to reflect the current grant-making terminology. The citation was QCFR 200.207A. When was this statute passed, 102A6? It was passed in 2006. So what's the significance of the repeal? Well, I think the regulation referred to it as a title of special condition. Right, well, so we know that previous statutes referred to special conditions for high-risk grantees. So presumably there's other types of special conditions. And for the last 13 years, at least, the Office of Justice Programs has treated special conditions as conditions that apply to all grants. If we look at Section 101.09, which also uses the term special conditions, that refers to auditing grants for compliance with special conditions. It's used in a manner that suggests special conditions apply to all grants. But that just leaves open the question of what a special condition is. I'm not following the argument. Well, a special condition is a condition that's applied to the grant. So it's a condition that applies grant-wise. So it applies to all of the recipients of the grant. Right, but if the special condition is the concurrence of the Ninth Circuit's reference to that reg about high-value grantees, then it doesn't help you very much to make that point, does it? Well, it does because the regulation from 1988 that the Ninth Circuit cited referred to special conditions for high-risk grantees. Now we know, though, that the current practice, at least as of 2006 and to the present, refers to a special condition for a high-risk grantee is referred to as a specific condition or an additional requirement. If we take a look at the Office of Justice Programs grant documents in this case, the conditions that are applied, not just the three challenge conditions in this case, but the 50-plus conditions that are attached to the Burn-Drag grant are called special conditions. Is that like the Buy America, et cetera? Yeah, there's like a number. Do you have any one of those that's not traceable to an independent statutory provision? Well, I think these conditions are traceable to statute, but there's a number. For example, can you just tell me that's not? Well, I mean, condition number 22 refers to nondisclosure agreements. Conditions 34 and 35 impose training and conference attending requirements. If you just listen to conditions, I'm asking. The Third Circuit, I thought, went through and as to the various conditions, traced them to a particular statute authorizing the Department of Justice to impose that condition. Do you have any condition that doesn't have a statutory analog like that that you could identify for us? Well, yes, and those are some of the examples I was giving. I mean, there's a condition that refers to nondisclosure agreements. There's a condition that refers to training and conference attendance. There's conditions that refer to body armor requirements that go beyond the statute. I think it's very common for conditions to take a general concept from a statute and to then be expanded to put more precise requirements or more detailed requirements that go beyond the statute. Remember, this is from a grant-making context, so I don't think it's disputed that the Office of Justice Programs has authority to impose more precise requirements, and I would submit that's why a special condition exists, so the office can address emergent law enforcement issues that fit within the grant program. So on your interpretation of special conditions, what would be the limiting principle? What would be the restriction on what the assistant attorney general could do? Well, I think it has to be related to law enforcement, so it has to be germane to the grant program. It has to have a law enforcement nexus, but I think that would be the one. But you can envision conditions that have a law enforcement nexus that are related to the law enforcement function and that would completely disrupt the formulaic nature of the grants. Well, I don't think you could put a condition on that changes the funding formula. That's prescribed by statute, and there are certain things that Congress prescribes, and one thing to note here is this is Congress reappropriates the Burn Jag program every year, reappropriates the Office of Justice Programs, and it's not uncommon for Congress to place riders on what are priority purposes of the grant to codify special conditions that Congress likes. I think that's how the Buy America law came into place. They saw the Office of Justice Programs to place us on as a condition. The record shows that the Buy America condition was imposed prior to there being the Buy America statute? Yes, I see the Buy America body armor requirements, so I don't want to misspeak, but it was one of those two requirements that was originally a special condition that the Office of Justice Programs imposed around 2010, 2011, and then a few years later Congress codified that requirement and made it a federal statute, so it wasn't just a special condition of the Burn Jag program, not just a special condition of the Office of Justice Programs, but it was actually made a statute, and I think that's notable because this is a program, again, that gets reappropriated every year. Riders are frequently placed on OJP funding, so if the special condition did stretch too far from its nexus to law enforcement, there is a feedback loop here, and I think there would be strong blowback from Congress because states and localities care about their Burn Jag funds. I'm happy to address other questions about Section 101-02-86, but otherwise I'll turn to a couple other points. Now apart from Section 101-02-86, which we contend is an independent basis for the special conditions, there are a few other provisions that justify at least the three challenged conditions here. One of those provisions is 34 U.S.C. 101-53-85D, and that requires grant applicants to certify compliance with all provisions of this part of the statute and then all other applicable federal laws. Now in 2016, the Department's Inspector General found that grant recipients, despite certifying compliance with federal law, were not complying with 8 U.S.C. 1373. So in the summer of 2016, to remove any doubt from grant recipients that they were required to comply with Section 1373, the Department of Justice advised grant recipients that Section 1373 was in fact an applicable federal law and that beginning in the following grant year, fiscal year 2017, which is the grant term where this is a multi-year grant, so this is what we're still fighting about here, is that grant recipients would be required to, in addition to certifying that they generally comply with applicable federal laws, they would be required to specifically certify compliance with Section 1373. I think the district court's interpretation of 101-53-85D is limited to laws that specifically and only pertain to grant administration is an unduly narrow reading of the statute. It's the same reading that the Third Circuit undertook, isn't it? Yeah, that's correct. And it centers on the fact that on any other reading, the word applicable seems to be surplusage and thus to violate the canon of construction that every word should be given meaning. Well, I think the Third Circuit ultimately reached that conclusion. They recognized this was a close call, but applicable still does work here in the sense that an applicable law is one that applies to federal grant recipients. Yeah, but the statute would be subject to the same interpretation for which you advocate if the word applicable were not there. No, I think it would be broader. It would apply to all laws. It would be all federal laws, and there are laws that are on their face that are not applicable to state and localities and that are not germane to the grant program. And you couldn't be in violation of them? You couldn't be in violation if they didn't apply to you. Well, I think it also places a germaneness limitation. I think the converse is true here. If we take a look at, for example, Norfolk Western v. American Train Dispatchers, which found similar language is not limited without more. So simply referring to the word applicable is not enough. I think the way the district court interpreted the statute would be saying that applicable laws that apply to federal grant management or that apply to federal grant administration. So I certainly agree that applicable is a meaningful word and that it has a limitation, but the district court read too much into that. They just mentioned two other subparts of Section 10153. One is part A. Help me with that. It read too much into it relative to how you did, and just could you specify the way in which you think it took, you think applicable does some limiting work? The district court made too much of it how? Exactly. So I think the district court read the statute as referring to applicable, all other applicable federal laws that apply to grant management. So they took applicable as referring to federal grant administration. Now, when Congress wants to limit a statute to apply to federal grant administration, it has done so. We gave two examples on page 24 of our blue brief where that exact language has been found, and the district court read that type of language into 10153A5D here. Applicable is a law that applies as germane to the grant program and that applies to states and localities, and it does not do more than that. What does that mean, germane? I mean, it has a relationship to the Office of Justice Programs, to the Bern JAG grant program. So here it has some relationship to law enforcement to promoting coordination, cooperation, information sharing with and between or among law enforcement agencies. I'm almost out of time, but two other provisions. 10153A4 requires the reporting of programmatic information. Reporting on who law enforcement has taken into custody would be the type of programmatic information since what is funded here is a program or activity, a law enforcement program or activity. 10153A5C requires certification. There has been coordination with affected agencies. Again, the special conditions relate to policies related to coordination and cooperation. Thank you. Good morning, Your Honors. May it please the Court, I'm Jeffrey Dain, a city solicitor for the City of Providence. I will be splitting the appellee's response with my co-counsel, Matthew Jerzyk, who is the city solicitor for the City of Central Falls. During my allotted time, I will be addressing the Bern JAG statute generally, as well as 34 U.S.C. section 101-02. Mr. Jerzyk will be addressing questions related to 10153 as well as constitutional issues.